# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

| | | | |
|---|---|---|---|
| MATTHEW MILLER, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | 3:12-cv-223 | |
| | ) | | |
| ZIMMER, INC., | ) | | |
| | ) | | |
| Defendant. | ) | | |

## OPINION AND ORDER

This is a relatively straightforward breach-of-contract case that raises a less-than-straightforward question of law. Matthew Miller is a former employee of Zimmer, Inc. While he was still an employee, the parties entered into a non-competition agreement by which Miller agreed he would be restricted from working for some of Zimmer's competitors for a period of twelve months after he left Zimmer. In return, Miller would continue to be paid compensation during those twelve months, provided that certain necessary conditions were met. This agreement was tested when Miller resigned from Zimmer last year. Miller petitioned Zimmer for compensation pursuant to the agreement. Zimmer provided Miller one payment but then abruptly stopped. Miller argues this was a breach of contract, and Zimmer responds that Miller was not meeting the necessary conditions. So a classic breach-of-contract case is now teed up for discovery. So far, so good.

But this case gets more complicated when Miller's second cause of action is considered. Miller argues that Zimmer's failure to make payments to him violated the Indiana Wage Payment Statute. Zimmer has moved to dismiss that count, arguing that any post-employment

payments made under the non-compete agreement could never be considered "wages" under the Wage Payment Statute. As explained in detail below, I agree with Zimmer that these payments do not constitute wages under the Wage Payment Statute and will therefore grant its partial motion to dismiss.

## BACKGROUND

All of the following factual background comes from the Amended Complaint [DE 25-1], which I must accept as true in the context of a motion to dismiss. Miller started as a Sales Representative with Zimmer around May of 2010 and then approximately a year later he voluntarily resigned. Prior to his resignation, the parties had entered into an Agreement entitled "Zimmer Spine-Confidentiality, Non-Competition and Non-Solicitation Agreement for Sales Managers and Representatives" (the "Agreement"). This was a non-compete agreement with a twist: if Miller was denied specific employment due to the non-compete clause, and if Miller satisfied other conditions specified in the agreement, then Zimmer would provide Miller with monthly payments equal to his monthly base pay plus commission for up to twelve months. All of this was detailed in Section 9 of the Agreement. Here is what it says:

> To the extent Employee is denied a specific employment position that would otherwise be offered to Employee by a Competing Organization solely because of the restrictive covenant provisions of Section 7 of this Agreement, and provided Employee satisfies all conditions stated herein, then upon expiration of the period of time represented by any severance benefits Employee was offered, Company will make payments to Employee equal to Employee's monthly base pay and commission at the time of Employee's separation from Company employment (exclusive of any other extra compensation and any other employee benefits) for each month of such unemployment through the end of the Restricted Period, with commission based on a twelve (12) month average for the most recent twelve (12) full months immediately preceding Employee's separation from Company employment. Employee is obligated to diligently seek and pursue replacement employment . . .

2

> After eligibility for non-competition period payments is established, Employee will, on or before the 15th day of each month of eligibility for continued payments, submit to Company a written statement (I) identifying by name and address all prospective employers with whom Employee has applied or inquired about employment; (ii) identifying employment positions sought or applied for with each listed employer and specific actions taken in seeking each position; (iii) describing all other efforts made to obtain replacement employment; and (iv) describing any offers of employment received . . . .

[DE 25-1 at 2-4.]

In mid-May of 2011, before he resigned, Miller got an offer to work from one of Zimmer's competitors. He communicated that offer to Zimmer and asked if it intended to enforce the Agreement. The response from Zimmer was apparently unclear. Regardless, at the end of May he resigned and invoked Section 9 of the Agreement so that he could receive monthly payments in the event Zimmer chose to enforce the Agreement. A few days later, Zimmer sent a letter to Miller stating: "Zimmer declines to waive any restrictions under your Agreement and, accordingly, you may not accept this proposed employment without violating your ongoing contractual obligations to Zimmer." [DE 25-1 at 3.] The letter further stated that "upon receipt of your written confirmation that you have declined this offer of employment by Archer, we will issue an initial non-competition period payment to you in accordance with Section 9 of the Agreement, for the period commencing May 27, 2011 through June 15, 2011." [*Id.*]

Miller submitted the necessary written confirmation, and Zimmer paid him for that initial period. Things went sour after that, however. Miller submitted another written confirmation on July 15, 2011, which he believes met the requirements of Section 9 of the Agreement, but Zimmer refused to make any further payments to him. Miller thus initiated this action, arguing that Zimmer owes him payments from June 15, 2011 "through the end of the Restricted Period,"

as stated in the Agreement.

The issue before me now is whether this set of facts establishes a claim for relief under the Indiana Wage Payment Statute. In other words: Do payments made under a non-compete agreement constitute "wages" under that statute?

## DISCUSSION

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, I assume all factual allegations in the complaint to be true, viewing all facts – as well as any inferences reasonably drawn therefrom – in the light most favorable to Plaintiff. *Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). The analysis in this case is simplified because the sufficiency of the factual allegations themselves are not really in dispute. Rather, the dispute is whether those facts state any viable legal theory. Such cases, where there is a pure question of law challenging the legal as opposed to the factual sufficiency of a complaint, are particularly prime candidates for disposition at the motion to dismiss level. *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997).

In considering questions of state law that arise in diversity cases, the Court must decide the questions as it predicts the Indiana Supreme Court would decide them if the case were before it. *Woidtke v. St. Clair County, Illinois*, 335 F.3d 558, 561-62 (7th Cir. 2003); *Research Sys. Corp. v. IPSOS Publicite*, 276 F.3d 914, 925 (7th Cir. 2002). If the state's highest court has not directly ruled on an issue – as is the case here – intermediate appellate decisions ordinarily provide a strong indication of how the highest court would rule unless there is a persuasive reason to believe otherwise. *IPSOS Publicite*, 276 F.3d at 925; *General Accident Ins. Co. of America v. Gonzales*, 86 F.3d 673, 675 (7th Cir. 1996).

As noted, the question is whether the payments Miller alleges he is due constitute "wages" under the Indiana Wage Payment Statute which reads in relevant part as follows:

> (a) Every person, firm, corporation, limited liability company, or association, their trustees, lessees, or receivers appointed by any court, doing business in Indiana, shall pay each employee at least semimonthly or biweekly, if requested, the amount due the employee. The payment shall be made in lawful money of the United States, by negotiable check, draft, or money order, or by electronic transfer to the financial institution designated by the employee.

> (b) Payment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment. . . .

Ind. Code § 22-2-5-1.

The Wage Payment Statute was first passed during the Great Depression and is "designed to insure the regularity and frequency of wage payments." *Wilson v. Montgomery Ward & Co., Inc.*, 610 F. Supp. 1035, 1038 (N.D. Ind. 1985). Looking at the statute pragmatically, it's obvious that the Indiana General Assembly was thinking about garden-variety wages paid to employees in the normal course of business and almost certainly wasn't contemplating the more esoteric situation this case presents. This intuition about the legislature's likely intent can hardly be dispositive of this case. All sorts of difficult issues have arisen with respect to whether various types of payments fall under the statute – *e.g.*, severance packages, bonuses, commissions, vacation pay – and we still need to fully analyze whether the non-compete payments here could be considered wages. Nevertheless, the obvious intent of the statute does present a fairly high initial hurdle for Miller to overcome.

The first issue is whether the non-compete payments even constitute wages. To begin with, the Wage Payment Statute doesn't define the term "wages." Miller argues that, in light of this omission, "the courts look to the definition of 'wages' within Indiana's Wage Claims Act . . .

Ind. Code § 22- 2-9-1(b) [where] wages are defined as 'all amounts at which the labor or service

rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or

commission basis, or in any other method of calculating such amount." [DE 38 at 6.] Zimmer

disputes that the Wage Claims Act is relevant here, and there is good reason to be skeptical about

the merits of applying it to the Wage Payment Statute, as Judge Lee of this Court explained in

detail:

> Wilson has argued repeatedly that the amount promised is a wage because it falls
> within the broad definition of "wages" set out in I.C. 22-2-9-1, which defines the
> term as "all amounts at which the labor or service rendered is recompensed,
> whether the amount is fixed or ascertained on a time, task, piece or commission
> basis, or in any other method of calculating such amount." However, I.C.
> 22-2-9-1 does not purport to define the term for all Indiana wage statutes; in fact,
> it is part of an Act dealing with wage claims that was passed in 1939, while the
> Act which created I.C. 22-2-5-1 was passed in 1933. Wilson's counsel mistakenly
> believes that these two statutes are somehow related simply because they appear
> together in the statute book. In fact, I.C. 22-2-9-1 specifically limits the
> definitions to the 1939 Act.

*Wilson*, 610 F. Supp. at 1038.

Notwithstanding Judge Lee's persuasive take on the matter, both the Indiana Supreme

Court and the Seventh Circuit have applied the Wage Claims Act to the Wage Payment Statute,

so I will follow their lead. *See Thomas v. H & R Block E. Enters., Inc.*, 630 F.3d 659, 664 (7th

Cir. 2011); *Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind. 2004). It is,

moreover, a bit of an academic point, since the definition of wages contained in the Wage

Claims Act is hardly crystal clear itself. So even when courts do reference it in the context of the

Wage Payment Statute, it is then generally quickly brushed aside in favor of the extensive

Indiana caselaw interpreting the statute. For example, in *Thomas*, the Seventh Circuit cursorily

referenced the definition of wages in the Wage Claims Act, but then essentially ignored it in

favor of the various factors used by Indiana courts to figure out what "wages" means under the Wage Payment Statute. *See Thomas*, 630 F.3d at 664 ("Indiana courts consider a variety of factors to guide their determination of whether compensation . . . constitutes a wage.").

I will thus focus my attention to the Wage Payment Statute caselaw as well. The Indiana courts have been clear that for a payment to be a wage under the statute it must have "accrued during an employee's tenure" and "be connected to the work performed by the employee." *Wank v. St. Francis College*, 740 N.E.2d 908, 912 (Ind. Ct. App. 2000). As the Indiana Supreme Court put it, a wage "is compensation for time worked and is not linked to a contingency such as the financial success of the company." *Highhouse*, 807 N.E.2d at 740. This legalistic definition comports well with the commonsense notion of wages: a wage is "[a] payment to a person for service rendered. . . . The amount paid periodically, esp. by the day or week or month, for the labour or service of an employee, worker, or servant." *Oxford English Dictionary* (2d ed. 1989), available at http://www.oed.com.

Indiana courts have thus been more likely to find that payments are "wages" when they 1) are not linked to a contingency, 2) directly relate to the time that an employee works, 3) are paid on a regular periodic basis for regular work done by the employee, and 4) are not paid in addition to other, regular wages. *Thomas*, 630 F.3d at 664-65. Under this structure, courts have found that, for instance, vacation pay earned each week by an employee but deferred until a later time and contributions to a retirement savings plan can both constitute wages. *See Jeurissen v. Amisub, Inc.*, 554 N.E.2d 12, 13 (Ind. Ct. App. 1990); *Johnson v. Wiley*, 613 N.E.2d 446, 450 (Ind. Ct. App. 1993).

Bonuses and severance payments present an interesting and instructive middle ground. When a bonus or severance payment is directly tied to services the employee performed for the employer, it is a wage. *See, e.g., Jackson v. Arvinmeritor, Inc*., 2008 WL 64528 at *6 (S.D. Ind. 2008) (severance payments constituted wages because they were "not contingent on anything other than the length of the employee's service" and thus were "explicitly tie[d] ... to the performance of services"); *Gurnik v. Lee*, 587 N.E.2d 706, 710 (Ind. Ct. App. 1992) (bonus constituted a wage).

On the other hand, when a bonus or severance payment is *not* directly tied to services the employee performed for the employer, it is not a wage. *See, e.g., Firestone v. Standard Management Corp.,* 2005 WL 1799442 at *3 (S.D. Ind. 2005) (severance payment is not a wage because it could not be paid "during the period of employment"); *Design Industries, Inc. v. Cassano*, 776 N.E.2d 398, 403-04 (Ind. Ct. App. 2002) (severance payment does not constitute a wage under Indiana's wage statute if the payment is not tied to regular work performed by the plaintiff and the severance is not deferred compensation in the same manner as vacation pay); *Pyle v. National Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind. Ct. App. 1994) (compensation that was not linked to the amount of work done by the employee was a bonus, not a wage); *Jeurissen,* 554 N.E.2d at 13 (concluding that bonus based on the financial success of the employer and not linked to regular work done on a periodic basis by employee was not a wage).

 Given all of this caselaw, its clear to me that the non-compete payments at issue in this case do not constitute wages under the Wage Payment Statute. The non-compete payments neither "accrued during [Miller's] tenure" nor were they "connected to the work performed by"

Miller. *Wank*, 740 N.E.2d at 912. In fact, it is exactly the opposite: they payments accrued *after* Miller's tenure and were connected to the fact that he was *no longer performing* work. The whole point of the payments is that he was no longer employed by Zimmer or anyone else for twelve months.

Miller argues that payments still depended on his labor – he still had to actively seek employment not in violation of the non-compete and had to submit a monthly written report outlining his efforts – and that therefore he was essentially still working. As Miller puts it, he had to "engage in labor and services in order to continue to receive the non-compete payments." [DE 38 at 10.] But this turns things upside down. If one accepts Miller's view of things, the process of demonstrating that one is *not* working amounts to proof that one *is* working. This strikes me as an exceedingly odd way to view the concept of work.

But even if I were to accept it, Miller still cannot prevail. This is because one of the keys for the Wage Payment Statute is that an employee engages in labor and services *as an employee* – and the non-compete payments only started when he was no longer an employee. Under these circumstances, it is a stretch to view Miller's time spent looking for work with Zimmer's competitor to be "time worked" for Zimmer. *Highhouse*, 807 N.E.2d at 740. Miller also cites to cases interpreting wages in the context of military retirement pay (*In re Haynes*, 679 F.2d 718 (7th Cir. 1982)) and in the context of wage payment statutes from other states (*Raffaelli v. Advo, Inc.*, 218 F. Supp. 2d 1022 (E.D. Wis. 2002) and *Goodyear v. Pennsylvania Steel Foundry & Mach. Co.,* 1999 WL 1540562 (Pa. Com. Pl.)). But even if I found the analysis of wages in those cases persuasive, it's hard to see how or why I would credit it over the already discussed

wealth of caselaw specific to Indiana's Wage Payment Statute, which includes decisions both from the Indiana Supreme Court and the Seventh Circuit.

Therefore, the non-compete payments Miller claims he was due under the Agreement with Zimmer do not constitute wages under the Indiana Wage Payment Statute.

## CONCLUSION

For the foregoing reasons, Defendant's Partial Motion to Dismiss [DE 33] is **GRANTED** and Count II of Plaintiff's Complaint is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

ENTERED: August 14, 2012

s/ Philip P. Simon
PHILIP P. SIMON, CHIEF JUDGE
UNITED STATES DISTRICT COURT